## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **773, L.L.C.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 11-2103-KHV** |
| | ) | |
| **SCOTTSDALE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff's Motion For Summary Judgment On The Issue of Coverage (Doc. #28) and Defendant Scottsdale Insurance Company's Motion For Summary Judgment (Doc. #30), both filed October 28, 2011.  For reasons stated below, the Court overrules both motions.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving parties are entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the

nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which she carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.

## Factual Background

The following facts are uncontroverted or deemed admitted.

Plaintiff owns a multi-tenant commercial building at 733 Commercial Street, Atchison, Kansas.  Effective January 30, 2010 through January 30, 2011, defendant issued a business property insurance policy to plaintiff for the property at 733 Commercial.  The Policy includes an additional coverage provision as to collapse of the building as follows:

D.  Additional Coverage – Collapse

The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in D.1. through D.7.

1.  For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2.  We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form, if such collapse is caused by one or more of the following:
a. Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

b. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

c. Use of defective materials or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

d. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

(1) A cause of loss listed in 2.a. or 2.b.;
(2) One or more of the "specified causes of loss";
(3) Breakage of building glass;
(4) Weight of people or personal property; or
(5) Weight of rain that collects on a roof.

3.  This Additional Coverage – Collapse does not apply to:

a. A building or any part of a building that is in danger of falling down or caving in;

b. A part of a building that is standing, even if it has separated from another part of the building; or

c. A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling,

shrinkage or expansion.

Policy at 6-7, Commercial General Liability Coverage Form, Exhibit A to <u>Defendant's</u>
<u>Memorandum</u> (Doc. #31).

In mid-July of 2010, tenants at 733 Commercial complained that a door was not closing
properly.  In mid to late July, Jeff Caudle, plaintiff's representative, visited the property to inspect
the door.  Caudle noticed a vertical crack in a masonry joint to the left of the front door on the
property.  On July 27, 2010, Rick Fay of the Building Department of Atchison, Kansas sent plaintiff
a letter which stated in part as follows:

> [On] Monday, July 26, 2010 I surveyed the building at [733 Commercial].  Visible
> exterior damage due to a number of structural failures was evident.  The sidewalk
> and a portion of the street were barricaded to reduce the public's exposure to sudden
> dramatic failure and collapse. * * *
>
> The structure is to remain unoccupied and barricades that you provide remain in
> place until a Plan of Correction provided by a Kansas licensed engineer with
> structural expertise is provided to the Code of Enforcement Office.

Exhibit C to <u>Defendant's Memorandum</u> (Doc. #31).

Plaintiff retained Mark Schulte, a professional engineer, to examine the structural condition
of the southwest corner of the building.  On July 29, 2010, Schulte inspected the building.  On
July 30, 2010, Schulte sent a letter to Caudle which stated that the southwest "corner first floor brick
column" was failing, that the "outer wythe of brick that was replaced at some point in time in the
past was not of full brick thickness under the load bearing column," and that as a result of
insufficient support, "load was transferred to the exterior wythe of the 9 foot wide wall west of the
column resulting in extreme rotational displacement of the wall."  Schulte noted "brick distortion"
along the top of one of the walls and that the southwest "ends of the first floor (basement ceiling)
floor joists [we]re appreciably deteriorated from moisture."  Schulte advised Caudle that a portion

of the southwestern exterior wall of the building needed to be removed and "reconstructed from street level."   Based on Shulte's recommendations, plaintiff planned to begin repairs and reconstruction on August 10, 2010.

On August 7, 2010, the southwest exterior facade of the building suffered a partial collapse. The top part of the building's wall fell to the sidewalk below it.  Plaintiff seeks coverage for damages caused by the collapse.  In a notice of loss form, plaintiff's insurance agent, Maximum Insurance, LLC, advised defendant that plaintiff thought that water entering from behind the wall of the building caused the collapse.

Defendant retained Rodney Sommer, a structural engineer, to determine the cause of the collapse.  Sommer opined as follows:

> It is my opinion the collapse of the masonry walls at the northwest entry to 733 Commercial was caused by ongoing deterioration of the masonry components due to water infiltration, numerous freeze/thaw cycles, and possible erosion of the deteriorated mortar joints.  This failure may have also been aggravated by the lack of proper connection between the second floor structure and the masonry walls.  The water infiltration was probably due to deteriorated and unmaintained roofing and coping on the parapet walls.

Letter From Sommer to Eagle Adjusting Dated September 10, 2010 at 5, attached as Exhibit G to Defendant's Memorandum (Doc. #31).  Defendant also asked Sommer if the building decay was hidden from view and if the weight of ice or snow contributed to the collapse.  Sommer responded as follows:

> I do not have knowledge of what was visible prior to the collapse of the north/northwest portions of the upper level wall.  However, it is obvious from viewing the interior of the adjacent remaining portions of the upper level walls that water entry had been a long term problem.  It is probable that water  entered  the brick wall through the parapets  and deteriorated  roofing for a long period of time. This water entry would have contributed to freeze-thaw deterioration of the masonry over time.  Ice and snow loading on the roof would tend to compress the brick and mortar and this type of action over several cycles, along with possible lateral

> movement of the wall due to potential lack of sufficient original floor joist ties, probably resulted in the collapse of the brick pedestal between the upper level windows.

> Ice and snow loading on the roof should not have caused the wall to collapse if the masonry was in a non-deteriorated condition.

Letter From Sommer To Eagle Adjusting Dated October 8, 2010 at 1, attached as Exhibit H to Plaintiff's Memorandum (Doc. #29).

Schulte testified that before the collapse, he concluded that a failing column and transferred weight to the exterior of the wall caused the collapse. His report did not mention the floor joists on the second floor or damage to the interior of the bricks. Schulte testified that when he inspected the building, he could not see any damage to the interior of the bricks or the connection between the second floor floor joists and the horizontal wall or the facade of the wall. Schulte Depo. at 33-34.

Schulte testified that based on his review of pictures after the collapse, water damage on the ceilings in the basement and second floor was plainly visible and not hidden from view. Schulte testified that the water damage was not connected to the structural problems in the brick wall that he saw in July of 2010.

On October 8, 2010, defendant sent plaintiff a letter which denied coverage. The letter explained that defendant did so because a specified "cause of loss" did not cause the collapse and damage to the wall was not "hidden from view" before the collapse. Exhibit G to Plaintiff's Memorandum (Doc. #29) at 8.

On January 12, 2011, in the District Court of Atchison County, Kansas, plaintiff filed suit against defendant for breach of contract. Plaintiff claims that the Policy covered the loss due to the collapse of the building. On February 18, 2011, defendant removed the case to federal court.

**Analysis**

-6-

Both parties seek summary judgment on the issue of coverage. Plaintiff argues that the collapse provision in the Policy covers the partial collapse of its building. In particular, plaintiff claims that the collapse was caused by building decay that was hidden from view and that it did not know of the decay before the collapse. Defendant argues that the Policy does not provide coverage because (1) the building collapse was not "abrupt," (2) the water damage and building decay was not "hidden from view" and (3) the building was in danger of "falling down" or "caving in" before it actually collapsed.

**I.      Waiver Of Defendant's Argument That The Building Collapse Was Not Abrupt**

Initially, plaintiff argues that defendant has waived its argument that the building collapse was not abrupt because it did not include this defense in its letter which denied coverage or in the pretrial order. Waiver is the voluntary and intentional relinquishment of a known right. See Schraft v. Leis, 236 Kan. 28, 36, 686 P.2d 865, 873 (1984); Jones v. Jones, 215 Kan. 102, 116, 523 P.2d 743, 754 (1974). It is the expression of an intention not to insist upon what the law affords. Id.; Flott v. Wenger Mixer Mfg. Co., 189 Kan. 80, 90, 367 P.2d 44 (1961); Howard v. Farmers Ins. Co., Inc., 5 Kan. App.2d 499, 505, 619 P.2d 160, 165 (1980). While it is consensual in nature, the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements. Id. (citing Flott, 189 Kan. at 90, 367 P.2d at 51).

A.      Denial Of Coverage Letter

Where an insurer bases its refusal to pay a loss upon a forfeiture or failure to comply with particular conditions, it cannot thereafter maintain a defense based upon another condition not referred to in such refusal to pay and of which it then had knowledge. See Pac. Indemnity Co. v. Berge, 205 Kan. 755, 473 P.2d 48, 57 (1970). While waiver may forestall the forfeiture of an

insurance contract, it cannot be invoked to expand the scope of coverage of a policy. <u>Aks v. Southgate Trust Co.</u>, 844 F. Supp. 650, 659 (D. Kan. 1994); <u>see</u> <u>Waeker v. Am. Family Mutual Ins. Co.</u>, 275 Fed. Appx. 777, 779 (10th Cir. April 25, 2008) (district court correctly rejected waiver and estoppel because policy unambiguously excluded coverage); <u>Russell v. Farmers Ins. Co., Inc.</u>, 38 Kan. App.2d 290, 292, 163 P.3d 1266, 1268 (2007) (insured's failure to comply with policy condition may be waived, but waiver cannot expand scope of coverage); <u>Hennes Erecting Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 813 F.2d 1074, 1080 (10th Cir. 1987) (waiver and estoppel cannot be used to increase carrier's risk beyond policy terms); <u>Federated Mut. Ins. Co. v. Botkin Grain Co.</u>, 64 F.3d 537, 541–42 (10th Cir. 1995) (waiver and estoppel may forestall forfeiture of policy, but cannot be used to expand its coverage); <u>Von Hillman v. Colonial Penn. Ins. Co.</u>, 19 Kan. App.2d 375, 377, 869 P.2d 248, 249 (1994) (waiver and estoppel cannot be used to expand policy coverage); <u>W. Food Prods. Co. v. United States Fire Ins. Co.</u>, 10 Kan. App.2d 375, 381, 699 P.2d 579, 584 (1985) (estoppel cannot expand plain scope of policy).

Here, defendant sent plaintiff a letter which explained that it denied coverage because a specified "cause of loss" did not cause the collapse and damage to the wall was not "hidden from view" before the collapse. Doc. #37-2 at 8. The requirement that the collapse be abrupt is part of the coverage provision of the policy. Policy at 6-7 ("coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in D.1. through D.7"). Because plaintiff has to establish an abrupt collapse to come within the scope of the coverage provision in the Policy, defendant did not waive its argument by failing to include the argument in its initial letter which denied coverage. <u>See</u> <u>Hennes</u>, 813 F.2d at 1078–79 (carrier's failure to list exclusion when it rejected insured's claim did not operate to eliminate that exclusion from policy);

-8-

Carpenter, Weir & Myers v. St. Paul Fire & Marine Ins. Co., No. 96–4076–SAC, 1998 WL 976309, at *15 (D. Kan. Oct. 30, 1998) (carrier not precluded from asserting additional exclusions in coverage litigation because it failed to mention every potentially applicable exclusion in denial letter); Topeka Tent & Awning Co. v. Glen Falls Ins. Co., 13 Kan. App.2d 553, 555-56, 774 P.2d 984, 986 (estoppel cannot be used where policy excluded coverage for specific occurrence for which insured sought payment), rev. denied, 245 Kan. 788 (1989); W. Food Prods., 10 Kan. App.2d at 381, 699 P.2d at 584 (carrier cannot forfeit coverage where policy unambiguously excludes coverage).

B.    Pretrial Order

Plaintiff also argues that in the pretrial order, defendant did not include the argument that the collapse was not abrupt.  The Court will not permit a party to raise an entirely separate claim or defense than those asserted in the pretrial order, but it ordinarily will allow a party to raise a specific argument or factual contention which arguably is included within a general claim asserted in the pretrial order.  See Hullman v. Bd. of Trustees, 950 F.2d 665, 667 (10th Cir. 1991) (trial court has discretion to exclude "issues and claims" not found in pretrial order); Prairie Band of Potawatomi Indians v. Wagnon, 276 F. Supp.2d 1168, 1182 n.62 (D. Kan. 2003) (omitting claim or defense from pretrial order is fundamentally different from omitting factual contention defendant perceives to be necessary to plaintiff's case), aff'd, 402 F.3d 1015 (10th Cir.), rev'd in part on other grounds, 546 U.S. 1072, (2005); see also Neide v. Grand Court Lifestyles, Inc., 38 F. Supp.2d 938, 943 (D. Kan. 1999) (plaintiff allowed to clarify that ERISA claim in pretrial order was pursuant to Section 1132 rather than Section 1140); Daneshvar v. Graphic Tech., Inc., 18 F. Supp.2d 1277, 1288 n.15 (D. Kan. 1998) (omission of entire theory from pretrial order constitutes waiver, but omission of specific position not fatal); Long v. City Of Leawood, Kan., 6 F. Supp.2d 1249, 1252 n.3 (D. Kan. 1998)

(omission of entire theory from pretrial order constitutes waiver), aff'd, 202 F.3d 282, 2000 WL

14257 (10th Cir. Jan. 7, 2000).  The Honorable Sam A. Crow of this district has held:

> Since it is intended to facilitate a trial on the merits, the pretrial order should not be used to defeat the lawsuit on a technicality or be construed in the spirit of a common law pleading.  Instead, pretrial orders should be liberally construed to cover any of the legal or factual theories that might be embraced by their language.  A policy of too-easy modification of pretrial orders not only encourages carelessness in the preparation and approval of the initial order, but unduly discounts it as the governing pattern of the trial.  On the other hand, an unswerving insistence upon every provision, under all circumstances, may work grave injustice in individual cases....  Indeed, the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

Koch v. Koch Indus., Inc., 179 F.R.D. 591, 596 (D. Kan. 1998) (citations and quotations omitted).

Here, the Pretrial Order (Doc. #33) states that one of the essential elements of plaintiff's

claim is that the policy "covered the collapse of Plaintiff's building." Doc. #33 at 3.  As a defense,

defendant has asserted that no coverage is available under the policy for the loss claimed.  Id. at 4

(plaintiff has failed to establish essential elements of cause of action because it cannot meet burden

to show that "coverage is available for its claimed loss").  As part of the factual contentions,

defendant argued that "the partial collapse of the subject building did not result from a 'covered

cause of loss,' as that term is contemplated by the policy." Id. at 3.  In contrast to its citation of two

exclusions in the policy, defendant did not affirmatively assert that the collapse was not abrupt.

Defendant could have more clearly articulated the factual basis why plaintiff had not established a

covered cause of loss, but because plaintiff had to show an abrupt collapse to establish coverage and

defendant argued generally that the policy did not cover the loss claimed, defendant adequately

preserved its argument.  The Court therefore overrules plaintiff's argument that defendant waived

its right to assert that the collapse was not "abrupt" within the meaning of the Policy.

-10-

## II.   Insurance Policy Interpretation

Plaintiff asserts that it is entitled to coverage for the partial collapse of its building under the collapse provision of the Policy because the collapse was caused by decay that was "hidden from view." Defendant argues that the Policy does not provide coverage because (1) the building collapse was not "abrupt," (2) the water damage and building decay was not "hidden from view" and (3) the building was in danger of "falling down" or "caving in" before it actually collapsed.

The interpretation of an insurance policy, like other contracts, is a question of law. See AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Terms in an insurance policy are generally given their plain and ordinary meaning unless the parties have expressed a contrary intent. See Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App.2d 944, 948, 925 P.2d 452, 456 (1996). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." Farm Bureau Mut. Ins. Co. v. Winters, 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." Id. If the policy is not ambiguous, the Court must enforce it according to its terms. See Am. Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983). As the insured, plaintiff has the burden to prove coverage under the policy. See Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 29-30, 804 P.2d 1374, 1383 (1991). Defendant bears the burden to show

that the loss is excluded by a specific provision in the policy.  <u>See</u> <u>id.</u>

      A.     <u>An Abrupt Collapse</u>

Defendant argues that it is entitled to summary judgment because plaintiff cannot show that the building collapse was "abrupt."  The Policy provides coverage for an "abrupt collapse" defined as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."  Section D.1.  Because plaintiff bears the burden of establishing coverage under the Policy, it must show that the collapse of the building was "abrupt."  <u>See</u> <u>Mulhern v. Philadelphia Indem. Ins. Co.</u>, 802 F. Supp.2d 317, 323-24 (D. Mass. 2011); <u>Shaufert v. Certain Underwriters at Lloyd's, London</u>, No. 3:09–00510, 2011 WL 2491379, at *2-3 (M.D. Tenn. June 22, 2011).

The Policy does not define "abrupt," but the term is ordinarily understood to mean "sudden" and "unexpected."  <u>See</u> <u>Malbco Holdings, LLC v. AMCO Ins. Co.</u>, 629 F. Supp.2d 1185, 1195 (D. Or. 2009) (plain meaning of word "abrupt" is sudden); <u>see also</u> Cambride Dictionaries Online ("sudden and not expected"), available at http://dictionary.cambridge.org/dictionary/american-english (last visited Feb. 7, 2012); MacMillan Online Dictionary ("sudden and unexpected"), available at http://www.macmillandictionary.com (last visited Feb. 7, 2012); Merriam–Webster Online Dictionary ("characterized by or involving action or change without preparation or warning"), available at www.merriam-webster.com (last visited Feb. 7, 2012); Dictionary.com ("sudden or unexpected"), available at http://dictionary.reference.com (last visited Feb. 7, 2012).

Defendant suggests that the term abrupt should be defined by the prior knowledge of the

insured about the risk of collapse.[1]  In other words, defendant suggests that the Policy does not

afford coverage if the insured knew of the particular risk which caused the loss.  Defendant's

proposed interpretation is inconsistent with the purpose of the Policy to provide coverage for "risks"

of direct physical loss.[2]  See Section A.  In addition, defendant's interpretation is inconsistent with

the structure of the collapse provision in the Policy.  The insured's knowledge of the risk of collapse

is addressed in subsection D.2. which excludes coverage for certain risks that are "known to an

insured prior to collapse."  See Policy, Section D.2.a. (coverage for "building decay that is hidden

from view, unless the presence of such damage is known to an insured prior to collapse"); Policy,

Section D.2.b. (same for insect or vermin damage).  Because subsection D.2 already addresses the

insured's knowledge of the specific covered risks and the term "abrupt" modifies the word

"collapse," the Court rejects defendant's argument that the term "abrupt" in the initial clause of

Section D should be defined based on the insured's knowledge of the "risk" of collapse.[3]  Instead,

consistent with the ordinary meaning of the term, the Court interprets the term "abrupt" to mean

"sudden and unexpected."

---

[1]    Defendant argues that the Kansas Supreme Court has defined the term "abrupt" to mean occurring "suddenly without any prior warning or knowledge on the insured's part." Doc. #31 at 7 (citing Krug v. Millers' Mut. Ins. Ass'n of Ill., 209 Kan. 111, 114, 495 P.2d 949, 952 (1972)). In Krug, the Kansas Supreme Court merely set out appellant's claim, not how the court interpreted the term abrupt. See Krug, 209 Kan. at 114, 495 P.2d at 952. Indeed, the policy in Krug did not use the term abrupt and provided coverage for "Collapse (not settling, cracking, shrinkage, bulging or expansion) of building(s) or any part thereof." Id. at 112, 495 P.2d at 951.

[2]    For example, an insured's knowledge of the risk of a tornado does not mean that the collapse of a building caused by a tornado is not abrupt.  Individuals and companies purchase insurance to protect against risks of losses caused by uncertain events.

[3]    Defendant apparently argues that the cause of the collapse (for example, water infiltration) must be abrupt.  In context, however, the term "abrupt" in the Policy modifies the term "collapse."  Accordingly, plaintiff need only establish that the collapse itself was abrupt, not that the underlying cause of the collapse was abrupt.

Viewing the evidence in a light most favorable to plaintiff, a reasonable jury could find that the building collapse was both sudden and unexpected. On July 27, 2010, Rick Fay of the Building Department of Atchison, Kansas advised plaintiff that the Building Department barricaded the sidewalk and portion of the street to reduce the public's exposure to "sudden" dramatic failure and collapse. On July 30, 2010, Schulte, an engineer retained by plaintiff, inspected the building and reported that the building needed certain repairs to restore its structural integrity. Schulte did not advise plaintiff that repairs needed to be made in a certain time period. On August 7, 2010, only three days before plaintiff was scheduled to begin repairs, the southwest exterior facade of the building partially collapsed. Plaintiff certainly knew of some risk of collapse, but viewing the evidence in a light most favorable to plaintiff, it did not "expect" that part of the building would collapse. In these circumstances, a reasonable jury could find that the collapse was abrupt within the meaning of the Policy. See Malbco Holdings, LLC v. AMCO Ins. Co., 719 F. Supp.2d 1311, 1314-15 (D. Or. 2010) (despite slow sagging of corner of hotel and gradual rot of building materials, reasonable jury could find abrupt, sudden failure of corner of hotel). Accordingly, the Court overrules defendant's motion for summary judgment on this issue.

Plaintiff argues that it is entitled to summary judgment that the collapse was abrupt within the meaning of the Policy. Plaintiff has not satisfied its burden to show that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). As the claimant, plaintiff bears the burden of proving its claims at trial. See Moore's Federal Practice (3d) § 56.11[1][b] (claimant bears burden of persuasion to obtain judgment, making summary judgment in favor of plaintiff less likely than for defendant, since plaintiff must show not only lack of material factual dispute but also that under undisputed facts, no reasonable judge or jury could find against plaintiff as a matter of law). Based

on the record evidence including the letter from the Atchison, Kansas Building Department which warned plaintiff of the potential for sudden dramatic failure and collapse, a reasonable jury could find that a partial collapse was expected.   The Court therefore overrules plaintiff's motion for summary judgment on this issue.

> B.   <u>Coverage For Collapse Caused By Building Decay Hidden From View</u>

As noted, plaintiff claims that it is entitled to coverage because the partial collapse of the building was caused by decay that was hidden from view.   The Policy provides coverage for a collapse caused by "building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse." Policy Section 2.a.  Plaintiff bears the initial burden to show a covered loss, <u>i.e.</u> that "building decay that [wa]s hidden from view" caused the collapse.[4]

Defendant argues that because water damage was plainly visible on the building before the collapse, no reasonable jury could find that any building decay was "hidden from view."  Defendant has not explained how the visible water damage is related to the potential causes of the collapse, <u>i.e.</u> internal brick decay and decay to the second floor floor joists.  Plaintiff's expert, Schulte, concedes that some water damage was visible before the collapse.  Schulte testified, however, that the visible water damage was not connected to the structural problems that he observed in July of 2010.   By late July of 2010, plaintiff knew that the building had structural problems, but a reasonable jury could find that the building decay which caused the collapse, <u>i.e.</u> internal brick decay and decay to the second floor floor joists, was hidden from view.  The Court therefore overrules defendant's

---

[4]   On the other hand, defendant bears the burden of proof to show that the exclusion applies, <u>i.e.</u> plaintiff knew of decay before the collapse.

motion for summary judgment on this issue.[5]

      C.      <u>Exclusion For Buildings In Danger Of Falling Down Or Caving In</u>

Defendant argues that plaintiff is not entitled to coverage because the building was in danger of "falling down" or "caving in" before it actually collapsed. <u>See</u> <u>Pretrial Order</u> (Doc. #33) at 3; <u>Defendant's Memorandum</u> (Doc. #31) at 8. Section D.3 of the Policy provides that the additional coverage for collapses does not apply to (a) a building that is "in danger of falling down or caving in," (b) a part of a building that is "standing, even if it has separated from another part of the building;" or (c) a building or any part of a building that is "standing, even if it shows evidence of cracks, bulging, sagging, bending. leaning, settling, shrinkage or expansion." Defendant essentially argues that the Policy provides no coverage for collapse if at the time of collapse, the building was at risk of collapse. Under defendant's theory, any building that is in danger of collapsing before it collapses is not covered under the Policy. Such an interpretation would render coverage illusory. Engineers surely would conclude that although the period of the danger may vary, every building is "in danger" of collapsing before it actually collapses. In context, Section D.3 of the Policy sets forth exclusions based on the condition of the building at the time of the claimed loss. Section D.3 defines that a building that has not actually collapsed and is merely in danger of collapsing is not covered under the Policy. Section D.3 cannot be reasonably read to exclude coverage for a building that collapses if the building was in danger of collapsing at some earlier time. The Court therefore overrules defendant's motion for summary judgment on this issue.

---

[5]      Plaintiff seeks summary judgment on this same issue. Based on the record evidence including the letter from the Atchison, Kansas Building Department on July 27, 2010, a reasonable jury could find that the building decay was visible. <u>See</u> Doc. #31-3 (visible exterior damage due to a number of structural failures was evident). The Court therefore overrules plaintiff's motion for summary judgment on this issue.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Summary Judgment On The Issue of Coverage (Doc. #28) filed October 28, 2011 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Scottsdale Insurance Company's Motion For Summary Judgment (Doc. #30) filed October 28, 2011 be and hereby is **OVERRULED**.

Dated this 29th day of February, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-17-